**Reversed and Rendered and Memorandum Opinion filed November 25, 2025.**



**In The**

# Fifteenth Court of Appeals

### NO. 15-25-00024-CV

**MIKE MORATH, IN HIS OFFICIAL CAPACITY AS TEXAS COMMISSIONER OF EDUCATION AND LA VILLA INDEPENDENT SCHOOL DISTRICT, Appellants**

**V.**

**DR. PAZ ELIZONDO, Appellee**

**On Appeal from the 455th District Court**
**Travis County, Texas**
**Trial Court Cause No. D-1-GN-22-002025**

## MEMORANDUM OPINION

The La Villa Independent School District terminated Dr. Paz Elizondo's probationary teacher contract for the 2021-2022 school year. Adhering to the procedure provided by the Education Code, Elizondo filed a grievance with the school board, appealed to the Commissioner of Education, and ultimately appealed to the trial court. The District denied Elizondo's grievance as untimely. Mike Morath, the Commissioner of Education, affirmed the District's decision. Elizondo

sought judicial review in the trial court, which reversed the Commissioner's decision. In a single issue on appeal the District and the Commissioner assert that the trial court erred in reversing the Commissioner's decision as it was supported by substantial evidence. We conclude that the Commissioner's decision that Elizondo's grievance was untimely is supported by substantial evidence, reverse the trial court's judgment, and render judgment that the Commissioner's decision is affirmed.

## BACKGROUND

### I. Factual Background

On May 21, 2019, Elizondo signed a "First-Year Probationary Contract" with La Villa Independent School District for the 2019-2020 school year. On April 22, 2020, Elizondo signed a "Second-Year Probationary Contract" with the District for the 2020-2021 school year. The second-year probationary contract was designated as such at the top of the front page in bold type:

**LA VILLA INDEPENDENT SCHOOL DISTRICT**
**Employee**

**STATE OF TEXAS**          Second-Year Probationary Contract          **COUNTY OF HIDALGO**

Both contracts contained statements, immediately above Elizondo's signatures that the signer has "read this Contract and agree[s] to abide by its terms and conditions." Both contracts further provided:

> Termination of Contract. This Contract will terminate, in accordance with the procedures at Texas Education Code chapter 21, if the Board determines that termination of your contract at the end of the contract period will serve the best interests of the District, or if the Board determines that good cause or a financial exigency exists. This Contract will also terminate if you provide written notice of resignation before the penalty-free resignation date (see Tex. Educ. Code § 21.105).

> On April 26, 2021, the District sent notice to Elizondo that his probationary

contract for the 2020-2021 school year would be terminated at the end of the contract term, with employment ending June 25, 2021.

## II.    Procedural Background

On April 29, 2021, Elizondo filed a Level I Grievance with the District. According to Elizondo, the District provided him with a second probationary contract by mistake instead of a term contract for the 2020-2021 school year. Elizondo's grievance asserted:

> I had been previously employed as a teacher in public education for at least 5 of the 8 years preceding employment by La Villa Independent School District. As per the Texas Education Code section 21.102, the District is required to provide me with a term contract.[1]

The District's Chief Academic Officer dismissed Elizondo's grievance as untimely, citing the District's local policy that required complaints to be "filed within 15 days of the date the employee first knew, or with reasonable diligence should have known, of the decision or action giving rise to the complaint or grievance." When Elizondo appealed the decision to the District's Board, the Board denied Elizondo's complaint.

Pursuant to Section 7.057 of the Education Code Elizondo sought review of the District's decision before the Commissioner of Education.[2] Elizondo repeated his assertion that the District was obligated under the Education Code to give him a term contract rather than a probationary contract. The District responded,

---

[1] Section 21.102(b) provides, "[t]he probationary contract may be renewed for two additional one-year periods, for a maximum permissible probationary contract period of three school years, except that the probationary period may not exceed one year for a person who has been employed as a teacher in public education for at least five of the eight years preceding employment by the district."

[2] Section 7.057 permits a person aggrieved by the action or decision of a school district to appeal the decision to the Commissioner of Education. Tex. Educ. Code § 7.057(a)(2).

recognizing the Commissioner's jurisdiction over the dispute, but asserting that Elizondo failed to timely exhaust his administrative remedies at the local level. The District argued that the Commissioner's review was limited to the timeliness of Elizondo's grievance, and the merits of his complaint should not be reached. Elizondo responded that his grievance was timely because he filed it within 15 days of learning of the termination of his probationary contract.

The Commissioner determined that the timeline to file the grievance began when Elizondo executed the second probationary contract. The Commissioner affirmed the District's decision finding that the record contained substantial evidence that the District did not err in denying Elizondo's grievance as untimely, and that Elizondo waived his right to complain about the type of contract he received by performing under the contract and accepting the benefits for a year before complaining.

Elizondo appealed the Commissioner's decision to the district court pursuant to Section 21.307 of the Education Code. *See* Tex. Educ. Code § 21.307 (permitting appeal of Commissioner's decision to district court). Elizondo sought reversal of the Commissioner's decision and reinstatement to his prior position with a term contract. Elizondo also requested declaratory relief pursuant to the Uniform Declaratory Judgments Act (UDJA). Tex. Civ. Prac. & Rem. Code § 37.004(a). The Commissioner and the District answered Elizondo's appeal of the Commissioner's decision and asserted that sovereign immunity deprived the trial court of jurisdiction over Elizondo's claims under the UDJA.

After receiving briefing and argument from Elizondo, the District, and the Commissioner, the trial court signed a final judgment. The trial court subsequently signed an amended final judgment because the date of the final judgment contained a typographical error. In the amended final judgment, the trial court reversed the

4

Commissioner's decision and denied the Commissioner and District's pleas to the jurisdiction. On February 24, 2023, the Commissioner and the District timely appealed the trial court's judgment to the Third Court of Appeals.

On November 25, 2024, the Third Court of Appeals sent notice to the parties that the "Court may lack jurisdiction over a portion" of the judgment. The Third Court determined that the trial court's Amended Final Judgment did not "specifically address the merits of Elizondo's UDJA action"; thus, that action was still pending. Recognizing that the court had jurisdiction to review the Commissioner's interlocutory appeal of the denial of his plea to the jurisdiction, the Third Court questioned whether it had interlocutory jurisdiction over the portion of the order reversing the Commissioner's administrative decision.

The Third Court abated the appeal on January 23, 2025, explaining the court was "uncertain whether the trial court intended its Amended Final Judgment to include a ruling on the merits of Elizondo's UDJA action." *Morath v. Elizondo*, No. 03-23-00125-CV, 2025 WL 270611, at *1 (Tex. App.—Austin Jan. 23, 2025, order). The Third Court directed the trial court to submit a supplemental clerk's record containing a clarification of its intent. *Id*.

On February 12, 2025, the trial court signed a "Second Amended Final Judgment" in which it (1) reversed the Commissioner's administrative decision; (2) granted the Defendants' pleas to the jurisdiction as to Elizondo's UDJA claim; and (3) dismissed Elizondo's UDJA claim. The Commissioner and the District appealed the trial court's Second Amended Final Judgment to this Court. *See* Tex. Gov't Code § 22.220(d). Elizondo did not file a notice of appeal challenging the dismissal of his declaratory-judgment claim.[3]

---

[3] Elizondo filed a motion to dismiss this appeal in favor of the appeal pending in the Third Court of Appeals. Because this appeal was filed by the Commissioner of Education and it

5

The Commissioner and the District each present one issue challenging the trial court's reversal of the Commissioner's decision. We will address both appellants' issues as one.

## I.        Standard of Review and Governing Law

The focus of this Court's review, as in the district court, is the decision of the Commissioner. *See N. E. Indep. Sch. Dist. v. Riou*, 598 S.W.3d 243, 251 (Tex. 2020); *Crowley Indep. Sch. Dist. v. Stoneham*, 714 S.W.3d 867, 875 (Tex. App.—15th Dist. 2025, no pet.). The Commissioner's decision may only be reversed if the decision is not supported by substantial evidence or the Commissioner's conclusions of law are erroneous. Tex. Educ. Code § 21.307(f).

We review the Commissioner's evidentiary determinations under the substantial-evidence standard. Tex. Gov't Code § 2001.174. "Review under the substantial-evidence rule is highly deferential—the issue is not whether the agency's decision is correct, but whether the record demonstrates a reasonable basis for it." *Stoneham*, 714 S.W.3d at 875 (quoting *Riou*, 598 S.W.3d at 251). Whether substantial evidence exists to support the Commissioner's decision is a question of law. *Montgomery Indep. Sch. Dist. v. Davis*, 34 S.W.3d 559, 566 (Tex. 2000).

A district court applying the substantial evidence standard of review may not substitute its judgment for that of the agency on weight of the evidence questions. *See* Tex. Gov't Code § 2001.174; *Dyer v. Tex. Comm'n on Envt'l Quality*, 646

---

challenged a judgment signed after September 1, 2023, we treated Elizondo's motion as a motion to transfer the appeal to the Third Court of Appeals, which we denied. The Third Court of Appeals agreed to transfer this appeal to this Court as being within the exclusive intermediate appellate jurisdiction of the Fifteenth Court of Appeals. *See* Tex. Gov't Code § 22.220(d); Tex. R. App. P. 27a.

S.W.3d 498, 514 (Tex. 2022); *Hyde v. Harrison Cnty.*, 710 S.W.3d 403, 407 (Tex. App.—15th Dist. 2025, no pet.). The issue for the reviewing court is not whether the Commissioner's decision was correct, but rather whether the record demonstrates some reasonable basis for the Commissioner's action. *See Riou*, 598 S.W.3d at 251.

## II. The Commissioner's Decision Is Supported by Substantial Evidence.

In seeking judicial review of the Commissioner's decision, Elizondo challenged the Commissioner's conclusions that Elizondo failed to timely file his grievance with the District and that he waived his right to complain that the probationary contract was erroneous. Elizondo also argues that the District's policy conflicts with Section 21.102 of the Education Code.

### A. The Relevant Inquiry

On appeal from the District, the Commissioner reviewed the timeliness of Elizondo's grievance. The Commissioner did not address the merits of whether the Education Code required the District to offer Elizondo a term contract. The Education Code does not authorize the Commissioner to reach the merits of a complainant's argument if the school district dismissed the grievance as untimely. *Davis v. Morath*, 624 S.W.3d 215, 223 (Tex. 2021) ("If the District was prohibited by its internal procedures from reaching the merits of the grievance, the scope of the Commissioner's appellate review is likewise limited.").

In our review of the trial court's decision, we are likewise constrained by the issues considered below. *See Stoneham*, 714 S.W.3d at 875. The Commissioner did not consider Elizondo's complaint that the District was required to give him a term contract pursuant to Section 21.102 of the Education Code because the issue before him was limited to the timeliness of Elizondo's grievance. Accordingly, we consider whether the Commissioner erred in concluding that Elizondo did not timely file his

7

complaint.

## B. Timeliness of Grievance

The Education Code authorizes school boards to adopt rules and procedures for hearing complaints from teachers and others. Tex. Educ. Code § 11.1511(b)(13). The District's rules provide that complaint forms must be filed "[w]ithin 15 days of the date the employee first knew, or with reasonable diligence should have known, of the decision or action giving rise to the complaint or grievance." Elizondo does not dispute that he must follow this rule, nor does he dispute that the Commissioner may consider whether the appeal should be denied due to the failure to comply with the District's grievance procedures, including the 15-day deadline. Elizondo argues, however, that the triggering event for the 15-day period was the District's notice that it was terminating the contract. The District argues that the triggering event was the District's offer of the second-year probationary contract. The Commissioner agreed with the District.

The Commissioner found that Elizondo's grievance complained about the District's offer of a probationary contract by mistake instead of a term contract for the 2020-2021 school year. The Commissioner discussed the differences between probationary and term contracts, notably that probationary contract termination is not appealable. *See* Tex. Educ. Code § 21.103(a). Term contracts, by contrast, include the right to a hearing by the school board or an independent hearing examiner and the right to appeal the board's decision to the Commissioner. *See id.* §§ 21.206 –.301.

The Commissioner found that Elizondo signed the probationary contract on April 22, 2020, but did not file a grievance until April 29, 2021. The record, therefore, supported the District's finding that Elizondo "knew or should have known that he had a probationary contract when he signed a contract plainly

8

reflecting that in its title." The Commissioner also found that Elizondo waived his right to complain about the type of contract that the District issued "when he performed under that contract for a year and accepted its salary and benefits."

Relying on the Supreme Court decision in *Davis v. Morath*, Elizondo argued that he was not required to file his grievance until he received notice of his termination. Elizondo's reliance on *Davis* is misplaced. In *Davis*, the Dallas Independent School District adopted a new teacher evaluation initiative that involved evaluating teachers on "scorecards" issued at the end of the school year. *Davis*, 624 S.W.3d at 218. The scorecard initiative was adopted in 2014 to be implemented in the 2014-2015 school year. *Id*. Pursuant to that initiative, teachers would not receive their scorecards until after the school year ended. *Id*. When the scorecards were distributed on September 18, 2015, some teachers were unhappy with their scores and filed a grievance within ten days as was required by the Dallas School District. *Id*. at 218–19. A District grievance hearing officer dismissed the teachers' grievance as untimely, finding that the teachers were aware of the scorecard initiative when it was adopted in May 2014 and should have filed their grievances at that time. *Id*. at 219. The teachers appealed to the Commissioner, who also found that the grievances were not timely filed. *Id*. at 219–20. The Texas Supreme Court held that the teachers' grievances were timely because they complained about the distribution of scorecards, not the implementation of the scorecard initiative, and their grievances were filed within ten days of receiving the scorecards. *Id*. at 225–26.

Elizondo argues that, like the teachers in *Davis*, he was not aware of his grievance until April 2021, when the District terminated his contract. But, the record does not support Elizondo's argument. Elizondo's grievance did not complain about termination of his contract in 2021, but about issuance of a probationary contract in

2020. Substantial evidence supports the Commissioner's decision that Elizondo's grievance was untimely. The probationary contract was titled "Second-Year Probationary Contract." The probationary contract contained termination language that only applied to probationary contracts, which permitted the District to terminate the contract at the conclusion of its term. Finally, just above Elizondo's signature, there was a statement averring that "I have read this Contract and agree to abide by its terms and conditions." The record contains no evidence that Elizondo filed a complaint asserting his right to a term contract until his probationary contract was terminated.

Because the Commissioner's decision that Elizondo's grievance was untimely was supported by more than a scintilla of evidence, the trial court erred in reversing the Commissioner's decision. *See Mireles v. Tex. Dep't of Pub. Safety*, 9 S.W.3d 128, 131 (Tex. 1999) (courts are required to affirm an agency's decision if there is more than a scintilla of evidence to support it). We sustain the District and the Commissioner's issues on appeal.[4] Accordingly, we affirm.[5]

## CONCLUSION

The trial court erred by substituting its judgment in place of the Commissioner's decision, which was supported by substantial evidence. We therefore reverse the judgment of the trial court and render judgment that the order

---

[4] Because we conclude substantial evidence supports the Commissioner's decision, we need not address the District and Commissioner's waiver arguments.

[5] Elizondo has not filed a cross appeal, but he argues in his appellate brief that the trial court properly denied the pleas to the jurisdiction filed by the District and the Commissioner with respect to his declaratory-judgment claims. Elizondo is correct that the First Amended Final Judgment that Elizondo appealed to the Third Court of Appeals denied the pleas to the jurisdiction and left Elizondo's declaratory-judgment claim unresolved. The Third Court abated that appeal, directing the trial court to clarify its intent as to the declaratory-judgment claim. The trial court subsequently signed a Second Amended Final Judgment, which granted the pleas to the jurisdiction, and Elizondo has not challenged the trial court's grant of those pleas.

of the Commissioner is affirmed.

/s/ April Farris
April Farris
Justice

Before Chief Justice Brister and Justices Field and Farris.

11